**MISSOURI PUBLIC SERVICE COMPANY, Plaintiff-Respondent,**

v.

**ALLIED MANUFACTURERS, INC., Defendants, W. L. Young, Defendant-Appellant.**

**No. KCD 29066.**

Missouri Court of Appeals, Western District.

April 2, 1979.

Kodas, Reed, Gingrich & McFadden, P. C., David Q. Reed, Kansas City, for defendant-appellant W. L. Young.

Jackson, Dillard, Brouillette & Farchmin, Gary J. Brouillette, John R. Weisenfels, Kansas City, for Missouri Public Service Co.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

SOMERVILLE, Presiding Judge.

Missouri Public Service Company (condemnor) and W. L. Young (property owner) both filed exceptions to the commissioners' award of damages in a condemnation action brought to secure an easement for an overhead electric power transmission line across a 1.327 acre strip of ground varying from 40 feet in width to 30 feet in width along the north edge of a 26.15 acre tract of land adjacent to Blue Springs, Missouri.

A jury assessed the property owner's damages at $6,366.00 notwithstanding evidence on the latter's behalf that the 26.15 acre tract sustained damages in the amount

of $1,577,891.00. In opposition thereto, condemnor introduced evidence to the effect that damages to the 26.15 acre tract did not exceed $4,500.00. The position advanced by the property owner throughout the trial was that the highest and best use of the property at the time of the taking (June 20, 1972) was for development as an "Office Park" but that the presence of the electric power transmission line (and its supporting poles) would constitute such an aesthetic blight as to render the entire 26.15 acre tract no longer suitable or adaptable for such use. The position advanced by the condemnor throughout the trial was that the 26.15 acre tract, both from the standpoint of development costs and marketability, was unsuitable for development as an Office Park, and that its highest and best use was for development as a subdivision for single family dwellings.

After his motion for new trial was overruled, the property owner promptly responded to the literally boundless chasm between his version of the damages sustained ($1,577,891.00) and the jury's version ($6,366.00) by taking an appeal. Surprisingly enough, a five day trial resulted in only two claims of error being singled out by the property owner on appeal: (1) error on the part of the trial court in applying an "erroneous legal criterion" for refusing property owner's request for a new trial on the ground that the verdict was "against the greater weight of the credible evidence"; and (2) an abuse of discretion on the part of the trial court in refusing to strike three veniremen for cause.

■ The inception of property owner's first point is as novel as its substance. In his motion for new trial the property owner alleged, among various other grounds, that the verdict was "against the greater weight of the credible evidence". The motion was submitted and argued without the benefit of a court reporter. After the trial court indicated that the motion for a new trial was going to be overruled, counsel for the property owner made an unusual request which the trial judge acceded to, namely, that the trial judge "go onto the record

because he [counsel for the property owner] thought it might be beneficial to him [counsel for property owner] to show in an appeal my reasoning." Upon going "onto the record" the trial court generalized at length concerning his thought processes for refusing to grant the property owner a new trial on the ground that the verdict was "against the greater weight of the credible evidence". After seining some seven pages of the transcript containing the trial judge's thought processes on the subject, the property owner takes one isolated statement out of context, "I don't do it except in instances where it is obviously unreasonable and where the conclusion is so ridiculous as to make the judicial system look ridiculous", and attempts to utilize it as a basis for distorting the overall reasoning assigned by the trial judge for overruling property owner's motion for new trial. This involuted approach is capped with the argument that the previously quoted matter palpably demonstrates that an "erroneous legal criterion" was relied upon by the trial judge for refusing property owner's request for a new trial on the ground that the verdict "was against the greater weight of the credible evidence". Parenthetically, it should be noted that property owner's first point is couched in terms of application of an "erroneous legal criterion" rather than in terms of an abuse of discretion.

A plethora of cases exists in this state holding that the grant or denial of a new trial on the ground that the verdict is against the weight of the evidence is peculiarly within the sound discretion of the trial court and in the exercise of such discretion the trial court is permitted to weigh the evidence. See Missouri Digest, New Trial 72(1), (2) and (3). The possibility of extensive abuses of this broad, discretionary power is effectively curbed by Rule 78.02 which provides that "[o]nly one new trial shall be allowed on the ground that the verdict is against the weight of the evidence." In *Ritzheimer v. Marshall*, 168 S.W.2d 159, 165 (Mo.App.1943), where one of the issues on appeal was the propriety of awarding a new trial on the ground that the verdict was against the weight of the

evidence, the issue at hand was summed up as follows: "Such a decision was a matter within his sound discretion. It is well-established law that trial courts in reviewing verdicts are permitted to weigh the evidence and, if they think injustice has been done, they may grant a new trial in cases where they would not be justified in taking an issue from the jury." This very rationale was inversely echoed by the trial judge in this case when he went "onto the record" and stated as follows: "I did think that their argument that what was taken here converted if from a prospective office park to a piece of ground that couldn't be developed into an office park was rather weak from the standpoint of logic, and apparently that's what the jury thought. . . . So I don't think that it's necessary for me to say how I would have ruled if I had been trying it without a jury, but I'm certainly in no way shocked with what the jury did. I think that the weight of the evidence, if it wasn't equally balanced, it probably was balanced the way the jury went, and that's not to take anything away from the sincerity or the theory of the defendant." Clearly the trial judge in the instant case *did* weigh the evidence and after doing so *concluded* that injustice had not been done. In *Moore v. Glasgow*, 366 S.W.2d 475, 481 (Mo.App. 1963), a broad, general admonition was laid down to the effect that jury verdicts "should not be set aside lightly or capriciously". The trial judge in the instant case obviously heeded this admonition as demonstrated by the following statements incorporated into the record: "What I had stated, and what I now repeat, is that the power to grant a new trial on the ground that the verdict is against the weight of the evidence should be used sparingly because if it was not used sparingly it can be used to interfere with the right to trial by jury. . . . So the fact that we have a right, only in the sense that mechanically we can get away with it—but that doesn't change the fact that I have the duty to follow the principles that restrict the type of circumstances in which I can grant a new trial as against the weight of the evidence."

This court is not impressed with the property owner's contention that the trial judge relied upon an "erroneous legal criterion" in refusing to grant a new trial on the ground that the jury's verdict "was against the greater weight of the credible evidence", nor the corollary argument that the trial court's refusal to do so bespoke of an "exaggerated awe of jury verdicts". If the decision in this case cuts along the lines of preserving the integrity of jury verdicts vis-a-vis the discretionary power of trial courts to disagree therewith when a submissible case has been made, then this court opts in favor of the former over the latter. The fact that the trial court was not as compliant as the property owner felt it should have been in response to his demand for a new trial on the ground that the verdict was against the weight of the evidence cannot stand muster as an impregnable reason for branding the trial court with error. Finding the property owner's first point to be lacking in substance and persuasiveness, the same is rejected.

■ The property owner's second and final point is cast in terms of an abuse of discretion on the part of the trial court for refusing to sustain the property owner's efforts to strike three veniremen for cause. This point relates to three veniremen in particular, Martin, Nolan and DeWitt. It's applicability with respect to DeWitt can be disposed of with dispatch as the trial court struck him of its own volition because of a hearing defect. As to the remaining two veniremen, Nolan and DeWitt, a close look at the record becomes necessary. As a prelude to subsequent specific interrogation of the two veniremen in question, counsel for the property owner put the following question to the jury panel at large: "Well, our evidence will be that the market value of this 26-acre suburban tract has been diminished by in excess of a million dollars, and all I really want to know is, is there anybody here who feels that, *without having heard the evidence*, that that just couldn't happen." (Emphasis added.) The property owner's second point is vulnerable to being disposed of on the basis that it seeks to commit the jurors, at least indirectly, to a

fixed notion as to damages, regardless of the evidence, a practice which has generated severe criticism and, concomitantly, prejudicial error. *Wright v. Chicago, Burlington & Quincy Railroad Co.*, 392 S.W.2d 401, 408–09 (Mo.1965). A look at the instant record in greater depth reveals that the responses of the two veniremen in question to the highly questionable inquiry heretofore set forth were not tantamount to such admissions of prejudice as to offend the guiding principle stated with considerable ease and clarity in *Moss v. Mindlin's, Incorporated*, 301 S.W.2d 761, 771–72 (Mo.1956): "[O]n review by an appellate court, unless there is some fact which, we reasonably can say, in and of itself, necessarily showed prejudice, or unless there is an admission of prejudice, past or present, or unless there is something in the demeanor of the venireman which, despite his actual words, discloses the existence of prejudice in fact, we should not convict the trial court of an abuse of discretion in overruling a challenge for cause." Stripped of all superfluousness, and notwithstanding veniremen Nolan's original response that "I feel that it can't be unless the market value is such", that "26 acres, unless its right here in Kansas City, downtown area, just couldn't have that value, I don't believe", and that "If the evidence is there, but I can't imagine this happening, but go ahead", venireman Nolan stated his "feeling" could be "overcome by evidence" and in response to this final question put to him by property owner's counsel, "If we do prove it, will you follow the proof?", answered, "Yes. I can be persuaded." Likewise, stripped of all superfluousness, venireman DeWitt, after indicating his skepticism as to the amount of damages sought by the property owner, "without having heard the evidence", freely stated on further inquiry that his skepticism could be overcome "[i]f the evidence were such I could see it, but I would have to be shown, of course."

A fair summarization of the above proceedings is that counsel for the property owner was trying to commit the veniremen in question by placing the matter of damages in an evidentiary vacuum, and by way of response they candidly expressed unabashed amazement and honest skepticism at the amount of damages claimed without the aid or benefit of any attendant facts. Properly viewed, the initial responses of veniremen Nolan and DeWitt to the general inquiry broached by counsel for property owner did not transcend unabashed amazement and honest skepticism to the point of manifest prejudice. When the matter was further pursued with them in the context of what the evidence might or might not prove with respect to damages they responded with equal candor that they would be guided by the evidence. It is not necessary to give blind deference to the ruling of the trial court in order to conclude that it did not abuse its discretion when it overruled the strikes for cause leveled against veniremen Nolan and DeWitt.

Judgment affirmed.

All concur.